**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| CLIFFORD COOPER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO. 5:22-cv-00013-MTT-MSH |
| VS. | : | |
| | : | |
| GEORGIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court is a Complaint filed by *pro se* Plaintiff Clifford Cooper, an inmate currently incarcerated at the Baldwin State Prison in Hardwick, Georgia (ECF No. 1). Plaintiff has also filed a motion for leave to proceed *in forma pauperis* (ECF No. 2). For the following reasons, Plaintiff's motion is **GRANTED**, and his Eighth Amendment medical treatment claims against Defendants Dixon, Reyners, Burtch, Ross, Lewis, Brawner, Speigitt, and Whipple shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Because it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.      Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the Coastal State Prison. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each

2

month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.    Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.  Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.  The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.  Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW

## I.    Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all

factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or

4

omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Factual Allegations

Plaintiff's claims arise from his incarceration at the Baldwin State Prison ("BSP"). *See* Compl. 13, ECF No. 1.  According to the Complaint, on February 16, 2019, Plaintiff fell and broke his ankle while on his assigned detail picking up trash at BSP. *Id.*  Plaintiff contends that he showed his ankle to Defendant Dixon, a prison officer, but she refused to call medical. *Id.*  Later that afternoon, Defendant Reyners, another prison officer, directed Plaintiff to run ice call for the compound. *Id.*  Plaintiff showed Defendant Reyners his "black, blue, and swollen" ankle "and explained that he could not do the ice call and that he was in a lot of pain and desperately needed to go to medical." *Id.* at 14.  Defendant Reyners also refused to contact medical and again directed Plaintiff to run the ice call. *Id.*

After Plaintiff finished assisting with ice call, he "tried to go to medical" but another officer, Defendant Burtch, "stopped him and argued with him" before finally permitting Plaintiff to seek medical help, but she did not help Plaintiff get to medical. *Id.*  Defendant Ross, the nurse on duty at medical, wrapped Plaintiff's ankle and gave him ibuprofen for pain relief, but she refused to x-ray the ankle despite having "immediate access to an x-ray machine." *Id.*  Defendant Ross "then ordered the Plaintiff back to his dorm without any

further test or assistance." *Id.* Defendant Ross also refused to address Plaintiff's concern that he was assigned a top bunk and might not be able to access his bunk due to "severe pain from his injury." *Id.*

Plaintiff continued to experience significant pain over the next three days. *Id.* at 14-15. He complained about the pain to the pill call nurses that came to his building twice a day as well as "any administration that he would see come through for inspection but no-one would assist him with his issue." *Id.* at 14. Plaintiff states that he "had to go without eating numerous times because he could not walk" to the chow hall. *Id.* at 15.

On February 19, 2019, Plaintiff was finally taken back to medical for assistance. *Id.* Defendant Speigitt, a physician, performed an x-ray and confirmed that Plaintiff's ankle was broken in two places and would require immediate surgery. *Id.* Plaintiff was taken to Augusta State Medical Prison ("ASMP") on February 22, 2019. Physicians at ASMP, however, determined that the delay in treatment had caused Plaintiff's ankle to swell too much to perform the surgery, although physicians recognized that "surgery was necessary as soon as possible" because Plaintiff's ankle had "already started to heal with the bones unaligned." *Id.* Plaintiff was thus transferred to the Medical College of Georgia "in hopes that perhaps they could perform the necessary surgery on Plaintiff's ankle but unfortunately the result was the same." *Id.* Plaintiff was thus transferred back to BSP, where he "was only given aspirin for the pain and was not able to eat hardly anything because the pain was so excruciating." *Id.* Plaintiff asked Defendant Speigitt for "something besides aspirin to help relieve the pain," but Defendant Speigitt never provided additional or different pain control medication. *Id.* at 15-16.

6

On March 17, 2019, Plaintiff was taken back to ASMP and surgery was performed. *Id.* After the surgery, Plaintiff was taken back to BSP where he "continued to be denied any pain reliever except aspirin and was denied a proper physical therapy." *Id.* Plaintiff submitted sick call requests and complained "numerous times that he was having issues with his normal day functions because there seem to be no relief since his surgery, in fact at some points the pain seem to be worse." *Id.* Plaintiff alleges that he pursued a formal grievance concerning this lack of care from June 14, 2019 until some time after October 8, 2019, and he further alleges that he "has continued to address this issue with the medical department up to the present time because he still has issues of pain and suffering but has continued to be denied for any assistance or relief." *Id.* Plaintiff contends that Defendants' action and inaction has violated his constitutional rights, and as a result he seeks declaratory and injunctive relief, compensatory and punitive damages, costs, and "such other and further relief as the Court may deem just and proper." *Id.* at 18-20.

## III.    Plaintiff's Claims

### A.    Statute of Limitations

As an initial matter, the facts as alleged by Plaintiff suggest that the statute of limitations may be at issue in this case; indeed, in a separate action filed by Plaintiff, the Court dismissed largely identical claims as barred by the statute of limitations. *See Cooper v. Ward*, Order Dismissing Compl. 3, ECF No. 8 in Case No. 5:21-cv-00272-TES-CHW (M.D. Ga. Nov. 2, 2021) ("*Cooper I*") (adopting recommendation to dismiss on statute of limitations grounds after declining to determine whether cause of action accrued on February 16, 2019 (the date of Plaintiff's accident) or March 17, 2019 (the date of

Plaintiff's surgery)).  The limitations period for filing a section 1983 claim is controlled by state law.  *Wilson v. Garcia*, 471 U.S. 261, 266 (1985).  In Georgia, the proper limitations period for a section 1983 claim is the two-year period prescribed for personal injury claims in O.C.G.A. § 9-3-33.  *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986).  "When applying state limitations periods to § 1983 claims, we also apply any relevant state tolling provisions."  *Meyer v. Gwinnett Cnty.*, 636 F. App'x 487, 489 (11th Cir. 2016) (per curiam).  Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual.  *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996).  Under § 1983, a claim accrues when the plaintiff knows or has reason to know he has been injured, and he is or should be aware of who injured him.  *Id.* at 562; *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).

Plaintiff's Complaint shows that he was initially injured on February 16, 2019, and he did not file this action until January 24, 2022—nearly three years later.  But a complaint may not be dismissed on statute of limitations grounds prior to service unless it "appear[s] beyond a doubt from the complaint itself that [Plaintiff] can prove no set of facts which would avoid a statute of limitations bar."  *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001).  There are at least three reasons why the Court cannot say at this early stage that the statute of limitations bars Plaintiff's claims "beyond a doubt."  First, Plaintiff alleges facts showing that he attempted to grieve the continued failure to provide him with pain relief beginning on June 14, 2019.  Compl. 16, ECF No. 1.  This process continued for approximately four months at BSP itself and presumably continued for some time after that while Plaintiff appealed this decision to the GDC.  *See id.*  It is possible that the statute

of limitations in this case should be tolled while Plaintiff exhausted his administrative remedies. *Leal*, 254 F.3d at 1280 (vacating sua sponte dismissal of complaint on preliminary screening because "the statute of limitations may have been tolled on account of Leal's exhaustion of administrative remedies").

In addition, the Georgia Supreme Court entered emergency orders in 2020 "suspend[ing], toll[ing], extend[ing], and otherwise grant[ing] relief from any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including but not limited to any . . . statute of limitation" due to the COVID-19 pandemic, and each extension lasted approximately a month. Order Declaring Statewide Judicial Emergency 2 (Mar. 14, 2020) (stating order would expire on April 13, 2020 unless otherwise modified or extended), https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf; Order Extending Statewide Judicial Emergency 1 (Apr. 6, 2020) (extending March 14, 2020 Order until May 13, 2020), https://www.gasupreme.us/wp-content/uploads/2020/04/CJ_Melton_Extension_Order_signed_entered.pdf; Second Order Extending Declaration of Statewide Judicial Emergency 1 (May 11, 2020) (extending March 14, 2020 Order until June 12, 2020), https://www.gasupreme.us/wp-content/uploads/2020/05/Second-Order-Extending-Declaration-of-Statewide-Judicial-Emergency_as-issued.pdf; Third Order Extending Declaration of Statewide Judicial Emergency 2 (June 12, 2020) (extending March 14, 2020 Order until July 12, 2020), https://www.gasupreme.us/wp-content/uploads/2020/06/THIRD_ORDER_EXTENDING

9

_DECLARATION_OF_STATEWIDE_JUDICIAL_EMERGENCY_AS_ISSUED.pdf.
The Third Order also provided that "[t]he 122 days between March 14 and July 14, 2020, or any portion of that period in which a statute of limitation would have run, shall be excluded from the calculation of that statute of limitation." Third Ext. Order 4. Tolling may therefore be appropriate on these grounds.

Third, Plaintiff's allegations suggest at least a possibility that the continuing violation doctrine could toll the applicable statute of limitations. The continuing violation doctrine is an exception to the general rule regarding the statute of limitations. *Lovett v. Ray,* 327 F.3d 1181, 1183 (11th Cir.2003). Where a continuing wrong is involved, "the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." *Smith,* 217 F. App'x at 881. Refusal to provide medical treatment has been held to constitute a continuing violation. *See, e.g., Brown v. Roberts*, 5:09-cv-117, 2010 WL 1258028, at *1 (M.D. Ga. Mar. 26, 2010).

Given that the statute of limitations in this case may have been tolled while Plaintiff exhausted his administrative remedies, during the state of judicial emergency brought about by the COVID-19 pandemic, and/or due to a continuing violation, the Court cannot say at this time that Plaintiff's claims are necessarily barred by the statute of limitations. As such, the Court declines to recommend dismissal of Plaintiff's claims on this basis and without further factual development on this issue.

> B.   Claims against the Georgia Department of Corrections

Turning to the substance of Plaintiff's claims, the Court first notes that Plaintiff has named the Georgia Department of Corrections ("GDC") as a Defendant in this case. The

10

Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Thus, "[t]he Eleventh Amendment bars suits against a state for alleged deprivations of civil liberties unless the state has waived its immunity or 'unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.'" *Robinson v. Ga. Dep't of Transp.,* 966 F.2d 637, 640 (11th Cir.1992) (quoting *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989)). The United States Supreme Court has "concluded that Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment." *Id.* (citing *Quern v. Jordan,* 440 U.S. 332, 341 (1979)). Moreover, the State of Georgia has not waived its sovereign immunity with respect to cases brought in federal court. *See* Ga. Const. art. I, § II, para. IX(f) ("No waiver of sovereign immunity shall be construed as a waiver of any immunity provided to the state ... by the United States Constitution."); *see also Robinson*, 966 F.2d at 640. As a state entity, the GDC is also entitled to Eleventh Amendment immunity. *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections . . . . This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief."); *see also Will*, 491 U.S. at 70 (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983). Plaintiff's claims against the GDC are therefore subject to dismissal.

11

C.   Eighth Amendment Medical Treatment Claims

In addition to his claims against the GDC, Plaintiff has also raised claims against GDC Commissioner Timothy Ward; Dr. Sharon Lewis, the Director of the GDC's Office of Health Services; BSP Wardens Trevonza Bobbitt and Ronald Brawner; Dr. Speigitt; Nurse Ross; BSP Head Counselor Pretrillion Whipple; Lieutenant Burtch; and Officers Dixon and Reyners.   Compl. 6-12, ECF No. 1.   Plaintiff alleges that each of these Defendants was deliberately indifferent to his serious medical needs and thereby violated his Eighth Amendment rights. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Id.*  A plaintiff must first "set forth evidence of an objectively serious medical need" and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.*  In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).

Plaintiff has pleaded facts sufficient to show that his broken ankle and the severe pain resulting therefrom—even after his surgery—could be serious medical needs. *See Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) ("Under our case law, a reasonable jury could find that [prisoner's] severe pain and suffering constituted a serious medical

need."); *see also Mann v. Taser Int'l*, 588 F.3d 1291, 1307 (11th Cir. 2009) (holding that a serious medical need may be "determined by whether a delay in treating the need worsens the condition"). Plaintiff, however, must also show that each individual named Defendant was deliberately indifferent to this serious medical need in order to state a constitutional claim.

As noted above, Plaintiff alleges that Defendants Dixon, Reyners, Burtch, and Ross observed his painful, swollen, and discolored ankle but delayed in providing him adequate care, which caused Plaintiff additional pain, delayed his subsequent surgery, and caused ongoing complications. These Defendants' delays in providing Plaintiff with treatment could therefore rise to the level of deliberate indifference. *See, e.g., Brown v. Hughes,* 894 F.2d 1533, 1538–39 (11th Cir.1990) (finding deliberate indifference where inmate with a broken foot was delayed treatment for a few hours). Plaintiff's Eighth Amendment claims against these Defendants may therefore proceed for further factual development.[1]

Plaintiff also alleges that he experienced significant pain while he was waiting at BSP for his surgery. Compl. 15-16, ECF No. 1. During this time, Plaintiff contends that he "pleaded with the Defendant Speigitt about acquiring something besides aspirin to help relieve the pain," but to no avail. *Id.* at 16. Plaintiff further contends that the pain was "so excruciating" that he was unable to eat for days. *Id.* Plaintiff also alleges that he continues to experience significant pain and "issues with his normal day functions" after the surgery.

---

[1] Plaintiff does not appear to allege that Defendant Speigitt delayed in providing Plaintiff with adequate medical care; rather, Plaintiff states that when Plaintiff was taken to see Defendant Speigitt, he performed x-rays and "immediately" moved Plaintiff to the crisis stabilization unit. Compl. 15, ECF No. 1.

*Id.* at 16.  Plaintiff contends he has complained to the "medical department" at BSP as well as Defendants Lewis, Whipple, and Brawner about these issues but has not received any relief.  *Id.*  The failure to treat severe pain may also constitute deliberate indifference to a serious medical need.  *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999).  Plaintiff has thus alleged facts sufficient to permit his deliberate indifference claims against Defendants Speigitt, Lewis, Whipple, and Brawner to move forward for further factual development.

In contrast, Plaintiff has not alleged that the remaining individuals named as Defendants in this action—Defendants Ward and Bobbitt—personally participated in any decisions concerning Plaintiff's medical treatment.  It instead appears that Plaintiff is attempting to hold these Defendants liable in their supervisory capacities.  It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Rather, supervisors can only be held liable under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation.  *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam).  A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

14

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

Plaintiff has not alleged any facts suggesting that a history of widespread abuse would have put Defendants Ward or Bobbitt on notice of a need to correct the alleged constitutional deprivation in this case; nor has Plaintiff alleged that either of these Defendants had an improper custom or policy concerning inmates' medical care or that they directed their subordinates to act unlawfully (or knew they would do so and failed to stop them). Plaintiff has therefore failed to plead an adequate basis for holding Defendants Ward and Bobbitt liable in their supervisory capacities. As such, these Defendants should be dismissed from this action.

        D.     Equal Protection Claims

Plaintiff also alleges that his "rights were violated on account of invidious discrimination . . . and class-based animus." Compl. 18, ECF No. 1. To the extent Plaintiff intends for these allegations to support an equal protection claim, he has failed to state a cognizable claim. The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. In order to state an equal protection claim, a plaintiff must allege that similarly situated persons—or "comparators"—have been treated disparately through state action. *Williams v. Sec'y for Dep't of Corr.*, 131 F. App'x 682, 685-86 (11th Cir. 2005) (per curiam); *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). In this case, Plaintiff has not alleged that any similarly

situated person was treated differently than he was, and he has therefore failed to state an equal protection claim upon which relief may be granted. *See, e.g., Williams*, 131 F. App'x at 687 (affirming dismissal of equal protection claims where plaintiff "failed to allege facts showing that any other specific inmate" had been treated differently than plaintiff). Any equal protection claim Plaintiff seeks to bring in this action should therefore be dismissed without prejudice.

E.   <u>Conspiracy Claims</u>

Plaintiff also appears to suggest that Defendants engaged in a conspiracy to violate his constitutional rights. Compl. 18, ECF No. 1. To the extent Plaintiff seeks to bring a separate conspiracy claim, such claims are subject to dismissal. "To establish a *prima facie* case of conspiracy, the plaintiff must allege, among other things, that the defendants reached an understanding to violate [his] rights." *See, e.g., Eubank v. Leslie*, 210 F. App'x 837, 842 (11th Cir. 2006) (per curiam) (internal quotation marks omitted) (alteration in original). Plaintiff has not pleaded any facts suggesting that each named Defendant in this case came to an agreement to violate his constitutional rights. "It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* As such, any separate conspiracy claim Plaintiff wishes to raise in this case should be dismissed without prejudice.

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED,** and his Eighth Amendment claims against Dixon, Reyners, Burtch, Ross, Lewis, Brawner, Speigitt, and Whipple shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED**

16

**without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional claims against Defendants Dixon, Reyners, Burtch, Ross, Lewis, Brawner, Speigitt, and Whipple, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly

17

advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has

been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of

the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED** this 15th day of March, 2022.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE

20